UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| TRACIE NYE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:21-CV-704 PLC |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of Social Security,[1] | ) |
| | ) |
| Defendant, | ) |

**MEMORANDUM AND ORDER**

Plaintiff Tracie Nye seeks review of the decision of Defendant Acting Social Security Commissioner Kilolo Kijakazi, denying her application for Supplemental Security Income ("SSI") under the Social Security Act. Because the Court finds that substantial evidence supports the decision to deny benefits, the Court affirms the denial of Plaintiff's application.

**I.     Background and Procedural History**

On February 6, 2018, Plaintiff filed an application for SSI, alleging she was disabled as of October 25, 2011, due to fibromyalgia, irregular heart beats, thyroid problems, rheumatoid arthritis, carpal tunnel syndrome, post traumatic stress disorder ("PTSD"), bipolar with major depressive disorder ("MDD"), seizure propensity, depression and anemia.[2] (Tr. 90, 215-223) The Social Security Administration ("SSA") initially denied Plaintiff's claim in August 2018, and she

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted, therefore, for Andrew Saul as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Because Plaintiff does not challenge the ALJ's determination that she was not under a disability as defined in the Social Security Act due to her multiple physical impairments, both severe and nonsevere, the Court does not discuss the finding in its Order.

1

filed a timely request for a hearing before an administrative law judge ("ALJ"). (Tr. 115) The SSA granted Plaintiff's request for review and conducted a hearing in August 2020. (Tr. 34-61)

In a decision dated September 30, 2020, the ALJ determined that Plaintiff "has not been under a disability within the meaning of the Social Security Act since February 6, 2018, the date the application was filed." (Tr. 16-27) Plaintiff subsequently filed a request for review of the ALJ's decision with the SSA Appeals Council, which denied review. (Tr. 2-7) Plaintiff has exhausted all administrative remedies, and the ALJ's decision stands as the Commissioner's final decision. *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).

## II.   Evidence Before the ALJ

Plaintiff, born February 13, 1979, testified that she lived with her 13-year old son in an apartment. (Tr. 42) Plaintiff testified that she cooked her son breakfast, lunch, and dinner, and took him to the pool to watch while he swam. (Tr. 48) She stated she straightened her home, shopped occasionally, and took care of her personal needs including bathing and dressing. (*Id.*) When the ALJ asked why she believed she was disabled, as relevant here Plaintiff responded that she was bipolar, suffered from depression, PTSD and memory loss, and was prone to seizures.[3] (Tr. 43) She testified that she spoke with a therapist at Compass Health once a month, and they prescribed medications for her insomnia, bipolar disorder, depression and anxiety. (Tr. 45) Plaintiff acknowledged that the medications helped most days, but she still had nightmares. (Tr. 46) She continued as follows: "And [I am] depressed because of my PTSD from my ex-husband, since he was abusive. And bipolar. There are some days I'm happy, and other days you just don't want to mess with me." (*Id.*) She noted she experienced panic or anxiety attacks when in public areas with others close by, and when she saw her ex-husband. (Tr. 52-53) Finally, Plaintiff

---

[3] Plaintiff's last seizure occurred in November 2013. (Tr. 43)

2

testified that she had both nightmares and flashbacks (up to four times a week) resulting from her ex-husband's abuse. (Tr. 53)

A vocational expert also testified at the hearing. (Tr. 54-59) The ALJ asked the vocational expert to consider a hypothetical individual similar in age and education to Plaintiff, with the following limitations:

> This individual's limited to performing sedentary exertion level work. Can occasionally climb stairs and ramps. Never climb ropes, ladders, or scaffold. Occasionally balance, stoop, kneel, crouch, and crawl. No pushing or pulling with the left lower extremity. Should avoid concentrated exposure to extreme cold, excessive vibrations, and even moderate exposure to unprotected heights and hazardous machinery. The individual can understand, remember, and carry out at least simple instructions. Perform nondetailed, routine, repetitive tasks. Can maintain concentration and attention for two-hour segments over an eight-hour period. Can make simple work-related decisions. Can adapt to routine or simple work changes where such changes are few and infrequent. The individual can perform work at a normal pace without what would be considered high-rate production quotas. And the job should require no more than occasional contact with the public, coworkers, supervisors. Would there be any jobs in the national or regional economy that an individual with those limitations could perform?

(Tr. 54-55) The vocational expert stated that such an individual would be able to work as a document preparer or a bench worker. (Tr. 55-56) When the ALJ modified the hypothetical to eliminate the individual's ability to kneel, crawl, or crouch, and added the restriction that the individual must be allowed to alternate between sitting and standing up to every 45 minutes as necessary, the vocational expert opined the changes would not impact her earlier answer. (Tr. 56-57) The ALJ then modified the restrictions as follows:

> Hypothetical number three is going to be the same as number one, but with the added limitation that any job must allow for occasional unscheduled disruptions of both the workday and work week. Secondary to the necessity to sit or lie down for extended periods of time during the workday. Potential occasional to frequent periods of due compensation, with an inability to focus or concentrate for an extended period of time. Potential effects of medications. And unreliability as far as showing up for work, secondary to symptoms or treatment.

3

(Tr. 57-58)  The vocational expert testified that there would not be any jobs in the national or regional economy that such an individual could perform.  (Tr. 58)

During her examination of the vocational expert, Plaintiff's attorney modified hypotheticals one and two to include the limitation that the individual have "no contact or proximity to coworkers due to various mental health impairments.  So, not even within sight or sound."  (Tr. 58-59)  The vocational expert opined that such an individual would not be competitively employable.  (Tr. 59)  She further stated that an individual such as the one described in hypotheticals one and two who "had difficulty 20 percent of the time remembering work life procedures, occasions, or even essential procedures and tasks that are given to them" would not be competitively employable.  (*Id.*)

With regard to Plaintiff's medical records, the Court adopts the facts that Plaintiff set forth in her Statement of Material Facts, which the Commissioner admitted with certain additions and clarifications.  (ECF Nos. 16-1, 21-1)  The Court also adopts the facts set forth in the Commissioner's Additional Material Facts, which Plaintiff admitted with additions and clarifications.  (ECF Nos. 21-1, 22-1)  The Court will cite to specific portions of the transcript as needed to address the parties' arguments.

### III. Standards for Determining Disability Under the Social Security Act

To be eligible for benefits under the Social Security Act, a claimant must prove he or she is disabled.  *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Hum. Servs.*, 955 F.2d 552, 555 (8th Cir. 1992).  Under the Social Security Act, a person is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42

U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). *Accord Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he [or she] lives, or whether a specific job vacancy exists for him [or her], or whether he [or she] would be hired if he [or she] applied for work." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. 20 C.F.R. § 416.920(a); *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process). At step one, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i); *McCoy*, 648 F.3d at 611. At step two, the Commissioner determines whether the claimant has "a severe medically determinable physical or mental impairment that meets the [twelve-month] duration requirement in § 416.909, or a combination of impairments that is severe and meets the duration requirement"; if the claimant does not have a severe impairment, the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(ii); *McCoy*, 648 F.3d at 611. To be severe, an impairment must "significantly limit[] [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). At step three, the Commissioner evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. § 416.920(a)(4)(iii); *McCoy*, 648 F.3d at 611. If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. § 416.920(d); *McCoy*, 648 F.3d at 611.

Prior to step four, the Commissioner assesses the claimant's residual functional capacity ("RFC"), 20 C.F.R. § 416.920(a)(4), which is "the most [a claimant] can still do despite [his or her] limitations," 20 C.F.R. § 416.945(a)(1). *See also Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009). At step four, the Commissioner determines whether the claimant can return to his or her past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.920(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his or her past relevant work, the claimant is not disabled; if the claimant cannot, the analysis proceeds to the next step. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.920(f); *McCoy*, 648 F.3d at 611. At step five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. §§ 416.920(a)(4)(v), 416.920(g), 416.1560(c)(2); *McCoy*, 648 F.3d at 611.

Through step four, the burden remains with the claimant to prove that he or she is disabled. *Moore*, 572 F.3d at 523. At step five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 416.960(c)(2).

### IV.    The ALJ's Decision

The ALJ applied the five-step evaluation set forth in 20 C.F.R. § 416.920 and found that Plaintiff: (1) had not engaged in substantial gainful activity since February 6, 2018, the application date; and (2) as relevant here, had severe mental impairments variously diagnosed as bipolar disorder, generalized anxiety, depressive disorder, trauma disorder, and borderline personality

6

disorder, that significantly limited her ability to perform basic work activities as required by SSR 85-28.  (Tr. 18)  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 19-21)

The ALJ found that, although "the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record."  (Tr. 22)  The ALJ acknowledged that Plaintiff reported experiencing "low energy, racing thoughts, irritability, anger outbursts, an abnormal sleep pattern, nightmares, flashbacks three or four times a week, paranoia, an abnormal mood, crying spells, hopelessness, helplessness, restlessness, fidgeting, memory loss, and difficulty concentrating."  (Tr. 24)  He noted that Plaintiff's mental status examinations ("MSE") remained stable through the relevant period, however.  (*Id.*)  Further, while Plaintiff's psychiatrist observed a labile mood, abnormal affect, poor insight and judgment, and occasional medication noncompliance (for financial reasons), he also stated that Plaintiff "maintained good eye contact, normal psychomotor activity and speech, a good memory, goal directed thoughts, and good concentration."  (*Id.*)  The ALJ found these clinical signs and findings, together with Plaintiff's conservative treatment history and report of daily living activities[4], were inconsistent with marked or extreme psychological limitations.  (*Id.*)

---

[4] The ALJ noted that at various times Plaintiff acknowledged shopping, caring for her and her sister's children, performing household chores, driving short distances, performing personal care, cooking, taking her boys swimming, going on nature walks, walking around town, organizing her father's house, managing her finances, baking, and visiting the library.  (Tr. 22, 24)

7

The ALJ then considered the medical opinions in the record. He stated that he found Plaintiff's psychiatrist's opinion unpersuasive, as it was unsupported by the psychiatrist's own MSEs and inconsistent with Plaintiff's conservative treatment history. (Tr. 25) The ALJ continued to state that he found the State agency psychological consultant's opinion persuasive, because it was consistent with the clinical signs and findings and Plaintiff's activities of daily living. (*Id.*)

After "careful consideration of the entire record," the ALJ determined that Plaintiff had the RFC to perform sedentary work, except that, as relevant here:

> She can understand, remember or carry out at least simple instructions, perform non-detailed, routine, repetitive tasks, maintain concentration and attention for 2-hour segments over an 8-hour period, make simple work related decisions, and adapt to routine and simple work changes where such changes are few and infrequent. She can perform at a normal pace without what would be considered high rate production quotas. She should have no more than occasional contact with supervisors, coworkers, and the public.[5]

(Tr. 21) Based on the vocational expert's testimony, the ALJ found that Plaintiff had the RFC to perform jobs that existed in significant numbers in the national economy, such as bench worker and document preparer. (Tr. 25-26) The ALJ therefore concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, since February 6, 2018, the date the application was filed. (Tr. 26)

**V.     Discussion**

---

[5] The ALJ explained his imposition of limitations as follows: "Although I find the claimant's allegations are not fully consistent with the evidence, a review of the limitations resulting from the claimant's impairments indicates that they are 'severe,' and require a reduction of the residual functional capacity. I have accommodated the claimant's moderate difficulties in understanding, remembering or applying information, interacting with others, maintaining concentration, persistence of maintaining pace, and adapting or managing herself….The claimant's assertions related to her inability to function due to mental deficits have been considered, but are not given great weight because the medical record does not support her allegations." (Tr. 24-25)

Plaintiff claims the ALJ erred in determining her mental RFC, because substantial evidence did not exist in the record to support the RFC determination.  (ECF No. 16)  The Commissioner counters that substantial evidence supported the ALJ's mental RFC determination.  (ECF No. 21)

A.  Standard of Judicial Review

A court must affirm an ALJ's decision if it is supported by substantial evidence. 42 U.S.C. § 405(g).  "'Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion.'"  *Chesser v. Berryhill*, 858 F.3d 1161, 1164 (8th Cir. 2017) (quoting *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)).  A court must consider "both evidence that supports and evidence that detracts from the ALJ's determination, [but it] 'may not reverse the Commissioner's decision merely because substantial evidence supports a contrary outcome.'"  *Id.* (internal quotation marks and citations omitted).

A court does not "'reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'"  *Renstrom v. Astrue*, 680 F.3d 1057, 1064 (8th Cir. 2012) (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)).  Therefore, the Court must affirm the ALJ's decision if "'it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings[.]'"  *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015) (quoting *Perkins v. Astrue*, 648 F.3d 892, 897 (8th Cir. 2011)).

B.  RFC Determination

RFC is "the most [a claimant] can still do despite" his or her physical or mental limitations. 20 C.F.R. § 404.1545(a)(1).  *See also Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). "The ALJ should determine a claimant's RFC based on all relevant evidence including the medical

9

records, observations of treating physicians and others, and an individual's own description of his limitations." *Moore*, 572 F.3d at 523 (internal quotation marks and citation omitted).

"Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017) (internal quotation marks and citation omitted). "However, there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (citations omitted). An ALJ "is not limited to considering medical evidence exclusively," as even though the "RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner." *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007) (citations omitted). While the Court recognizes that an ALJ "may not draw upon his own inferences from medical reports," *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000), the Eighth Circuit has held that the "interpretation of physicians' findings is a factual matter left to the ALJ's authority." *Mabry v. Colvin*, 815 F.3d 386, 391 (8th Cir. 2016) (citation omitted).

Plaintiff claims the ALJ erred in determining her mental RFC because the finding was not supported by substantial evidence. More specifically, Plaintiff notes that in reaching his conclusion regarding Plaintiff's mental RFC, the ALJ relied on the State agency consultant's opinion, the "stable" MSEs, and Plaintiff's conservative course of treatment. Plaintiff maintains such reliance was in error, as the ALJ failed to resolve the conflict between the outdated opinion provided by the State agency consultant and the subsequent medical evidence, consistently abnormal MSEs, and extent of mental health treatment she received during the relevant period. Plaintiff further asserts the ALJ failed properly to assess the treating psychiatrist's medical

10

opinion. The Commissioner counters that substantial evidence in the record as a whole supports the ALJ's decision.

    C.  Consideration of Medical Opinion Evidence

Plaintiff filed her applications for benefits after March 2017. Accordingly, the ALJ's treatment of medical opinion evidence is governed by 20 C.F.R. § 416.920c. Under this regulation, ALJs are to consider all medical opinions equally and evaluate their persuasiveness according to several specific factors – supportability, consistency, the medical source's relationship with the claimant, specialization, and other factors such as the source's understanding of the Social Security Administration's disability policies. 20 C.F.R. § 416.920c(c). ALJs must "articulate in [their] determination or decision how persuasive [they] find all of the medical opinions and all of the prior administrative medical findings in [the] case record." 20 C.F.R. § 416.920c(b).

In evaluating the persuasiveness of a medical opinion, the factors of supportability and consistency are the most important for an ALJ to consider, and the ALJ must "explain how he considered the supportability and consistency factors . . . in [the] determination or decision." 20 C.F.R. § 416.920c(b)(2).[6] An ALJ's failure to address either the consistency or supportability factor in assessing the persuasiveness of a medical opinion requires reversal. *Bonnett v. Kijakazi*, 859 Fed. Appx. 19 (8th Cir. 2021) (unpublished) (per curium) (citing *Lucas v. Saul*, 960 F.3d 1066, 1069-70 (8th Cir. 2020) (remanding where ALJ discredited physician's opinion without discussing factors contemplated in regulation, as failure to comply with opinion-evaluation regulation was

---

[6] "Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . , the more persuasive the medical opinions . . . will be." 20 C.F.R. § 416.920c(c)(1). "Consistency. The more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 416.920c(c)(2).

11

legal error)).  See also *Starman v. Kijakazi*, No. 2:20-CV-00035- SRC, 2021 WL 4459729, at *5 (E.D. Mo. Sept. 29, 2021).  An ALJ need not explain in his or her decision how he or she considered the other factors.  20 C.F.R. § 416.920c(b)(2).

    1. Dr. Gowda

In support of her claim, Plaintiff submitted a July 13, 2020 medical source statement from her treating physician, Dr. Bhaskar Gowda.  (Tr. 2168-2169)  Dr. Gowda listed Plaintiff's mental diagnoses as bipolar disorder, PTSD, and borderline personality disorder.  He found that Plaintiff would be "off task" 25% or more of the time, and would need to leave work prematurely or be absent at times, although he did not specify how often.  Dr. Gowda stated Plaintiff was moderately limited[7] in her ability to remember locations and work-like procedures, and markedly limited[8] in her abilities to understand and remember very short and simple instructions, and carry out very short and simple instructions.  He stated Plaintiff was extremely limited[9] in all other aspects, including her abilities to understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances; sustain an ordinary routine without special supervision; work in coordination with or in proximity to others without being distracted by them; make simple work-related decisions; complete a normal workday and workweek without interruptions from psychologically based symptoms; perform at

---

[7] "Moderately Limited" is defined as follows:  "Impairment levels are compatible with some, but not all, useful functioning.  Considered to be 1 standard deviation below the norm, or 30% overall reduction in performance."  (Tr. 2168)
[8] "Markedly Limited" is defined as follows:  "More than Moderate, but less than extreme resulting in limitations that seriously interfere with the ability to function independently.  Considered to be 2 standard deviations below the norm, or 60% overall reduction in performance."  (Tr. 2168)
[9] "Extremely Limited" is defined as follows:  "Impairment level preclude useful functioning in this category.  Considered to be 3 standard deviations below the norm, or 90% overall reduction in performance."  (Tr. 2168)

a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; ask simple questions or request assistance; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; respond appropriately to changes in the work setting; be aware of normal hazards and take appropriate precautions; travel in unfamiliar places or use public transportation; and set realistic goals or make plans independently of others.

> The ALJ found Dr. Gowda's opinion unpersuasive, as follows:
>
> This opinion is unsupported by her psychiatrist's own mental status examinations, and if the claimant had extreme limitations in the most basic mental work related activities, it would be reasonable to assume she would require intensive treatment. Therefore, this opinion is also inconsistent with the claimant's conservative treatment history.

(Tr. 25)

The Court agrees with the Commissioner's arguments and holds that substantial evidence supports the ALJ's decision. The ALJ here did not simply substitute his own interpretation for Dr. Gowda's opinion. Instead, he found the opinion unpersuasive because although Plaintiff reported low energy, racing thoughts, irritability, anger outbursts, abnormal sleep patterns and moods, nightmares, flashbacks, crying spells, hopelessness, helplessness, restlessness, fidgeting, memory loss and difficulty concentrating, her MSEs remained stable throughout the relevant period. (Tr. 24) The ALJ elaborated, noting that, "[s]ince January 2018, the claimant's psychiatrist generally observed a labile mood, abnormal affect, as well as poor insight and judgment, but in spite of occasional medication noncompliance for financial reasons, she maintained good eye contact, normal psychomotor activity and speech, a good memory, goal directed thoughts, and good concentration." (*Id.*) The ALJ concluded that the clinical signs and findings were inconsistent

13

with more than moderate psychological limitations, and further, that Plaintiff's conservative treatment history was inconsistent with disabling mental impairment.[10] (*Id.*) Finally, the ALJ found that Plaintiff's activities of daily living were inconsistent with marked or extreme limitations, as she previously reported shopping, caring for her and her sister's children, performing household chores, going on nature walks and walking around town, organizing her father's house, managing her finances, baking, and visiting the library, and testified at the hearing to driving short distances, performing personal care, cooking, and taking her boys swimming. (Tr. 22, 24) The ALJ concluded that although Plaintiff's mental impairments resulted in moderate limitations in understanding, remembering or applying information, interacting with others, concentrating, maintaining persistence or pace, and adapting or managing herself, she had the mental RFC to perform sedentary work with the above described limitations. (Tr. 21, 24-25)

The ALJ stated that he had reached his conclusion "[a]fter careful consideration of the entire record[.]" (Tr. 21) The Court notes the record contains evidence that: (1) despite noting that Plaintiff's affect was labile and her insight and judgment were poor, Dr. Gowda consistently stated she was cooperative, maintained good eye contact and personal hygiene, had normal speech and psychomotor activity and good memory, was alert, oriented to time, place and person, and exhibited no paranoia (Tr. 1171 (6/5/18), 1193 (7/31/18), 2173 (3/4/19), 2179 (4/1/19), 2199 (6/11/19), 2259 (3/30/20), 2293 (4/27/20), 2310 (5/28/20), 2352 (6/22/20)); (2) Plaintiff's return visits with Dr. Gowda were scheduled between four and eight weeks later, intervals that are inconsistent with treatment for severe mental impairment (Tr. 1171, 1194, 2201, 2224, 2232, 2261, 2295, 2354); (3) Plaintiff reported participating in a number of daily activities, including

---

[10] The ALJ noted that although Plaintiff received both medication management and case management on a regular basis, "she has not required inpatient psychological treatment, crisis management or emergent treatment secondary to acute exacerbations." (Tr. 24)

14

walking, cleaning and organizing her father's house, studying religion, paying her taxes and bills, checking her credit report, fishing, swimming, playing word games, reading the news, bowling, doing puzzles, baby-sitting her niece and nephew, and attending college classes (Tr. 1179, 1335, 1340, 2280); (4) at various meetings with her case worker Plaintiff reported that she did not have any mental illness health concerns (Tr. 2248, 2252, 2285); and (5) throughout the relevant period, Plaintiff stated on numerous occasions that she was looking for work and would like to find a job (Tr. 1211 (8/2/18), 2171 (3/4/19), 1276 (3/29/19), 2210 (9/5/19[11]), 2229 (2/4/20)).  *See Whitman v. Colvin*, 762 F.3d 701, 708 (8th Cir. 2014) (representing oneself as willing and available for work (in the context of unemployment insurance) is inconsistent with claims of disabling symptoms).

Upon consideration of the foregoing, it cannot be said that the ALJ used his own inferences to determine the medical evidence.  Rather, he reached his conclusion based upon all the evidence in the record, including Plaintiff's testimony and activities of daily living.

2.   Dr. Morgan

On August 7, 2018, James Morgan, PhD, a non-treating psychological consultant, reviewed the evidence of record and completed a Psychiatric Review Technique Form and Mental RFC Assessment.  (Tr. 89-107)  Based on his review of the record at that time, Dr. Morgan stated that for the period 02/06/2018 to the present, Plaintiff had the medically determinable impairments of depressive, bipolar and related disorders, personality disorders, and trauma-and-stressor-related disorders.[12]  (Tr. 95)  After providing a brief summary of the records he reviewed, Dr. Morgan provided additional explanation as follows:

> The claimant is 39 y/o and alleges PTSD, bipolar, MDD and depression….

---

[11] On September 5, 2019, Plaintiff reported to Dr. Gowda that she felt bored because she had been trying to find a job but was unsuccessful.  (Tr. 2210)
[12] For each diagnosis, Dr. Morgan stated "[a] medically determinable impairment is present that does not precisely satisfy the diagnostic criteria above."  (Tr. 96)

15

> Per ADLs the claimant cares for her kids.  She needs reminders for personal care tasks and taking medications.  She prepares simple meals and does household chores. She drives. She shops in stores. She can manage her finances. She spends times with others but has difficulty getting along with people.  She had difficulty with concentration and following directions.  She does not handle stress or changes in routine well.
>
> Given the totality of evidence the claimant can perform simple work in a limited social setting.  Restrictions given in MRFC are appropriate and supported.

(Tr. 96-97)  Dr. Morgan summarized the presence and degree of Plaintiff's specific understanding and memory limitations as follows:  "The claimant can remember and understand simple tasks." (Tr. 102)[13]  He summarized Plaintiff's sustained concentration and persistence limitations as follows:  "The claimant can maintain concentration, persistence and pace with simple tasks."[14] (Tr. 103)  He described Plaintiff's social interaction limitations as follows:  "The claimant would be best suited for a work environment which does not frequently interact with the general public or co-workers."[15]  (Tr. 103-104)  Finally, Dr. Morgan found that Plaintiff did not have adaptation

---

[13] Dr. Morgan found Plaintiff was not significantly limited in her ability to remember locations and work-like procedures or understand and remember very short and simple instructions, but was moderately limited in her ability to understand and remember detailed instructions.  (Tr. 102)

[14] Dr. Morgan found Plaintiff was not significantly limited in her abilities to carry out very short and simple instructions; perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances; sustain an ordinary routine without special supervision; work in coordination with or in proximity to others without being distracted by them; make simple work-related decisions; complete a normal workday and workweek without interruptions from psychologically based symptoms; and perform at a consistent pace without an unreasonable number and length of rest periods.  (Tr. 103)  He found Plaintiff was moderately limited in her ability to carry out detailed instructions, and maintain attention and concentration for extended periods.  (*Id.*)

[15] Dr. Morgan found Plaintiff was not significantly limited in her abilities to ask simple questions or request assistance; accept instructions and respond appropriately to criticism from supervisors; and maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness.  (Tr. 103)  He found Plaintiff was moderately limited in her ability to interact appropriately with the general public and get along with coworkers or peers without distracting them or exhibiting behavioral extremes.  (*Id.*)

limitations, stating as follows:  "The claimant can make simple work decisions and can adjust to routine work related changes in her environment." (Tr. 104)

In his written decision, the ALJ found Dr. Morgan's opinion persuasive.  (Tr. 25) Specifically, he stated that while Plaintiff's abilities to understand, remember, or apply information and to adapt and manage herself were moderately limited, "the State agency psychological consultant's opinion is persuasive because it is consistent with the clinical signs and findings and her activities of daily living, including her ability to manage her own finances, visit the library, and care for her children." (*Id.*)

Plaintiff contends that the ALJ erred in relying on Dr. Morgan's opinion, as it was outdated and in conflict with subsequent evidence, including Plaintiff's consistently abnormal MSEs and extensive mental health treatment.

"Once the ALJ has decided how much weight to give a medical opinion, the Court's role is limited to reviewing whether substantial evidence supports this determination, not deciding whether the evidence supports the plaintiff's view of the evidence." *Beamer v. Saul*, No. 2:18-CV-00094 JAR, 2020 WL 1511350, at *7 (E.D. Mo. Mar. 30, 2020) (citation omitted).  See also *Couch v. Berryhill*, No. 2:18 CV 46 DDN, 2019 WL 1992623, at *6 (E.D. Mo. May 6, 2019) (same).  While the Court agrees with Plaintiff that, generally, an ALJ cannot rely on remote evidence to determine a claimant's abilities, see *Frankl v. Shalala*, 47 F.3d 935, 939 (8th Cir. 1995), there is no evidence here that Plaintiff's condition deteriorated after Dr. Morgan rendered his opinion.  Instead, as noted above the record shows that Plaintiff's mental impairments remained stable during the time period between Dr. Morgan's assessment and the hearing.  Because there is no evidence that Plaintiff's mental impairments deteriorated from the time Dr. Morgan rendered his opinion to the time of the hearing, the ALJ

could properly consider this opinion evidence in determining disability.  *Beamer*, 2020 WL 1511350, at *9.

Furthermore, Plaintiff's therapy records from both before and after Dr. Morgan's report reflect that Plaintiff's mental symptoms were not as limiting as she claims.  In addition to the foregoing, the evidence shows that Dr. Gowda found Plaintiff's "flow of thoughts" was goal oriented, and she exhibited no signs of paranoia, auditory or visual hallucinations, or suicidal or homicidal ideations.  (*See, e.g.,* Tr. 1171 (6/5/18), 1193 (7/31/18), 2173 (3/4/19), 2199 (6/11/19), 2310 (5/28/20), 2352 (6/22/20))  Under these circumstances, the Court finds that at the time of the hearing in August 2020, the record as a whole supported the ALJ's consideration of Dr. Morgan's opinion evidence in determining whether Plaintiff was disabled.

It is important to note that the ALJ did not rely on Dr. Morgan's opinion exclusively to support his finding of non-disability.  A review of the ALJ's decision shows that he reached his conclusion after considering and weighing all the relevant evidence of record, as required.  When taken together with the record as a whole, a non-examining consultant's medical opinion may be considered when forming the basis of an ALJ's opinion.  *See Harvey v. Barnhart*, 368 F.3d 1013, 1016 (8th Cir. 2004) ("[T]he ALJ in this case did not rely solely on [the non-examining consultant's] opinion to reach his conclusions.  Rather, the ALJ relied on [the consultant's] opinion as one part of the record, which, as a whole . . . provides substantial support for his findings."); SSR 96-6P, 1996 WL 374180, at *1-3 (Soc. Sec. Admin. July 2, 1996) (an ALJ must treat expert opinion evidence of non-examining providers in conjunction with the other evidence of record).

The ALJ did not err in his consideration of Dr. Morgan's opinion in determining whether Plaintiff was disabled.

18

### VI.    Conclusion

As long as there is substantial evidence in the record that supports the ALJ's decision, this Court may not reverse simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001).  *See also Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011) (internal quotation marks and citation omitted) (An ALJ's decision is not to be disturbed "so long as the ... decision falls within the available zone of choice.  An ALJ's decision is not outside the zone of choice simply because [the Court] might have reached a different conclusion had [the Court] been the initial finder of fact.").  Here, the ALJ's decision, and, therefore, the Commissioner's, was within the "zone of choice".  *See Fentress v. Berryhill*, 854 F.3d 1016, 1021 (8th Cir. 2017).  The Court therefore finds that substantial evidence supported the ALJ's mental RFC determination.

For the reasons discussed above, the Court finds that substantial evidence in the record as a whole supports the ALJ's decision that Plaintiff "has not been under a disability, as defined in the Social Security Act, since February 6, 2018, the date the application was filed[.]"  (Tr. 26)

Accordingly,

**IT IS HEREBY ORDERED** that the final decision of Defendant denying Social Security benefits to Plaintiff is **AFFIRMED**.

A separate judgment in accordance with this Memorandum and Order is entered this date.

_____
PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE

Dated this 1st day of March, 2023.